# UNITED STATES DISTRICT COURT
## for the
### Eastern District of California

| | |
|---|---|
| United States of America<br>v.<br><br>DONALD ULYSSES MAXWELL<br><br>*Defendant(s)* | Case No. 2:24-mj-0053 JDP<br><br>**FILED** Apr 26, 2024<br>CLERK, U.S. DISTRICT COURT<br>EASTERN DISTRICT OF CALIFORNIA<br><br>**SEALED** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of <u>July 23, 2023 and March 14, 2024</u> in the county of <u>Tehama and Shasta</u> in the <u>Eastern</u> District of <u>California</u>, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Count 1: 21 U.S.C. § 841(a)(1);<br>Count 2: 18 U.S.C. § 922(g)(1);<br>Count 3: 18 U.S.C. § 922(g)(1). | Count 1: July 23, 2023 - Possession with Intent to Distribute a mixture or substance containing a detectable amount of fentanyl or a mixture of substance containing a detectable amount of methamphetamine;<br>Count 2: July 23, 2023 - Possession of a Firearm by a Convicted Felon;<br>Count 3: March 14, 2024 - Possession of a Firearm by a Convicted Felon. |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

/s/ Brian Nehring
*Complainant's signature*

Brian Nehring, Special Agent, DEA
*Printed name and title*

Sworn to me and signed telephonically.

Date: April 26, 2024

*Judge's signature*

City and state: Sacramento, California      Jeremy D. Peterson, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Special Agent Brian Nehring of the DEA, being duly sworn, depose and state as follows:

1. I am a Special Agent of the Drug Enforcement Administration (DEA), San Francisco Field Division, and have been so employed since 1991. I have had numerous assignments since beginning with DEA, including being assigned to the San Francisco Division Office between 1991 and 1994, the Alameda County Narcotics Task Force between 1995 and 1996, the San Francisco Division Clandestine Laboratory Enforcement Team from 1997 to 1999, the Oakland Resident Office between 1999 and 2002, and the Mobile Enforcement Team (MET) between 2002 and 2004. I have been assigned to the Sacramento Division Office since September of 2004 and I am still currently assigned to this office. I am currently assigned out to the Organized Crime Drug Enforcement Strike Force Team and have been since 2019.

2. This Affidavit is submitted in support of a Criminal Complaint charging **Donald Ulysses MAXWELL** with, on or about July 23, 2023, possession with intent to distribute a mixture and substance containing a detectable amount of Fentanyl and Methamphetamine, Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1); on or about July 23, 2023, felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and on or about March 14, 2024, felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

## PROBABLE CAUSE

3. I have been actively involved in recent years with a criminal investigation involving the Aryan Brotherhood prison gang based in the State of California, specifically operating out of California Department of Corrections and Rehabilitation (CDCR) prison facilities. I have learned that members of the Aryan Brotherhood have regularly used contraband prison cellular telephones to direct white gang associates both inside and outside of California State Prisons in the distribution of drugs and other criminal acts for the benefit of the gang.

4. During the course of my investigation, I have spoken to multiple confidential informants and other law enforcement investigators about the Aryan Brotherhood and its criminal activities inside and outside of prison. The investigators that I have consulted specifically include CDCR Special Services Unit (SSU) Special Agents who are familiar with the Aryan Brotherhood and its enterprise associates who are active in committing crimes for the gang.

5. From these conversations and consultations, I have learned that Donald Ulysses MAXWELL was an inmate incarcerated within CDCR. During his time being incarcerated within CDCR, investigators identified MAXWELL as an Aryan

Brotherhood associate based in Northern California. Investigators believe MAXWELL was associated with specific made members of the Aryan Brotherhood.

6. Inquiries with the National Criminal Intelligence Center (NCIC) revealed that MAXWELL has a significant criminal history. It includes apparent criminal convictions for the following offenses based upon a review of his rap sheet: felony convictions in 1995 for Robbery and Escape from Jail while Charged with a felony; a 1998 felony conviction for Felon in Possession of Ammunition; 2001 felony convictions for Receiving Stolen Property and Impersonate to Make Another Liable; 2005 felony convictions for Evading a Police Officer/Disregard Public Safety and Assault with a Deadly Weapon – Not a Firearm; a 2007 arrest while in prison for Assault by a Prisoner, Prisoner Possess Weapon and Attempted Murder resulting in a 2008 felony conviction for Assault with a Deadly Weapon; a 2009 felony conviction while in prison for Manufacture/Possession of a Deadly Weapon and a 2020 felony conviction for the same offense (Prisoner Manufacture Deadly Weapon) while at Pelican Bay state prison. These convictions are punishable by a term of imprisonment for more than one year, and for many of these convictions MAXWELL was, in fact, sentenced to a term of imprisonment of more than one year.

7. I noted that MAXWELL's rap sheet also listed subsequent arrests for which there were no clear adjudications to include Possession of Drugs While in Prison (2013) as well as multiple separate arrests in California in 2022 for offenses including Felon in Possession of a Firearm, Felon in Possession of Ammunition, Possession of a Controlled Substance while Armed, Carrying a Concealed Weapon in a Vehicle, Carrying a Loaded Firearm and Possession of a Controlled Substance.

8. I subsequently learned from speaking with CDCR SSU SA William Miles and Tehama County Sheriff's Detective Rob Epperson that MAXWELL had in fact been arrested on July 23, 2023, in Red Bluff, California (within Tehama County) for Possession of a Controlled Substances for Sale, Possession of a Controlled Substance while Armed with a Firearm, Possession of Stolen Property and other offenses. This arrest matched with information that I had previously received. With respect to the July 23, 2023, arrest, I learned the following details.

9. On July 23, 2023, during the early morning hours, Officers from the Red Bluff Police Department located a recently-reported stolen motorcycle parked at the Americas Best Value Inn in Red Bluff, California, directly in front of Room 118. Officers knocked on the door to Room 118. At that time, officers contacted two subjects, Donald Ulysses MAXWELL and Natasha Elizabeth POE-CARPENTER, at the door. Both subjects were questioned about the stolen motorcycle. They both denied any knowledge regarding the motorcycle. Officers asked for, and were given, verbal consent to enter the room to identify if anyone else was in the room. Upon entering the room, officers, including Officer Steven Weightman, observed a large amount of suspected drugs in the bathroom entryway and hallway. Officer Weightman believed what he observed was approximately a pound of methamphetamine, about a half-pound of suspected fentanyl, and approximately ten pounds of processed marijuana

bud. In addition, officers observed large amounts of U.S. Currency throughout the room. According to Officer Weightman, MAXWELL spontaneously stated during this time and specifically to the officers present that none of the contraband items belonged to POE-CARPENTER. Officers detained both subjects and then contacted the Tehama County Sheriff's Department Major Crimes Unit. That unit responded to Room 118 for further investigation.

10. That same day, July 23, Tehama Sheriff's Detective Epperson generated a search warrant affidavit and a search warrant was authorized by a Tehama County Superior Court Judge for Room 118, as well as for a Lexus sedan. The Lexus sedan was registered through DMV records to MAXWELL and was parked outside Room 118. During a search of Room 118, Detective Epperson and other officers located the following:

   - approximately 10.3 pounds of marijuana;
   - approximately 9.27 pounds of methamphetamine (4483 grams);
   - approximately .87 pounds of fentanyl (396 grams);
   - A loaded Smith & Wesson SD9 VE Pistol .9MM (SN: FXTG131);
   - A loaded Colt Trooper Mark 3 Revolver .357 Magnum (SN: J34913);
   - a digital scale and an apparent handwritten "pay-owe" sheet; and
   - $3,472.00 in U.S. Currency.

11. During the search of MAXWELL's Lexus, there was no tangible evidence located in the vehicle. However, upon conducting a search of the trunk of the vehicle, all the paneling which provides insulation, noise dampening, structure, and aesthetics to the trunk had been detached from the original manufacturer's location. The interior trunk panels were folded over, as though something had been recently removed from the vehicle.

12. Based upon my training and experience with firearms, I am aware that Colt and Smith & Wesson firearms are both manufactured outside the State of California. Consequently, the firearms possessed by MAXWELL and seized on July 23, 2023 had previously traveled in or affecting interstate or foreign commerce.

13. The suspected methamphetamine and fentanyl was tested utilizing a TruNarc Narcotics analyzer which is an electronic device that utilizes mass spectrometry light analysis to determine substances and which indicated that the suspected drugs contained methamphetamine and fentanyl.

14. I subsequently spoke with CDCR SSU SA Miles and Shasta Sheriff's Department Detective Travis Ridenour. I learned from them that MAXWELL had been arrested on March 14, 2024, in Anderson, California for Felon in Possession of a Firearm, Possession of a Controlled Substance while Armed with a Firearm, and Carrying a Concealed Firearm in a Vehicle. With respect to the March 14, 2024 arrest, I learned the following details.

15. On March 14, 2024, a uniformed detective for the Shasta County Sheriff's Department, was driving a fully marked Shasta County Sheriff's Office patrol vehicle in the area of Laverne Lane and Saddle Trail Road in Anderson, California. While in the area, the officer observed a newer flatbed truck with two large plastic water containers loaded on the flat bed at 16699 Bunny Lane. This address is known for criminal activity, narcotics sales and use, and stolen vehicles. The house on the property burned down several years prior and the property is now inhabited with numerous trailers. The flatbed truck was completely out of place at this property and there have been several recent water tank thefts. Due to these factors, the belief was that the flatbed truck and/or water tanks were possibly stolen. The detective decided to further investigate.

16. While approaching the flat-bed truck, the detective observed a male later identified as Donald MAXWELL, at the open of the driver's door. MAXWELL made eye contact with the detective, closed the driver's door, and began walking around the front of the truck. The detective recognized MAXWELL from prior encounters. The detective also observed another pickup truck nearby and identified another person sitting in the other pickup as Natasha POE-CARPENTER, who was listed as being on active probation. As other deputies arrived, POE-CARPENTER was asked to step out of the vehicle and detained. POE-CARPENTER stated she and MAXWELL had driven the flat bed down from Shingletown, California, and something had broken in the engine. POE-CARPENTER stated MAXWELL took ownership/possession of the flat bed several months ago and the two of them had driven it down from Shingletown that day. POE-CARPENTER stated to her knowledge, no one else had been inside the vehicle. When asked about the second pickup and why she was seated inside it, POE-CARPENTER stated her dog did not get along with the other dogs on the property and she was waiting for MAXWELL to fix the flatbed so they could leave.

17. While attempting to obtain the flat bed's Vehicle Identification Number (VIN), the license plate on the truck was not coming back through DMV inquiries. The detective observed a hand grip of a pistol through the windshield of the truck. The hand grip was sticking up between the driver's seat and center compartment. MAXWELL was already known to be a convicted felon and not allowed to be in possession of firearms. Due to the observation of MAXWELL at the open driver's door upon arrival, his admission the vehicle was his and the fact he shut the door prior to approaching the detective, the belief was that he was in possession of this firearm and attempting to conceal it. The detective opened the driver's door and recovered a black 9mm Beretta handgun. The handgun had a live, unexpended 9mm round in the chamber and 12 live rounds in the magazine. Based upon my training and experience with firearms, I am aware that Beretta handguns are manufactured outside the State of California, and consequently, the Beretta handgun possessed by MAXWELL on March 14, 2024 had previously traveled in or affecting interstate or foreign commerce.

18. During a further search of the flat bed truck, the detective searched the fold-up center console next to where the pistol had been concealed between the console and the seat.

4

The detective located a bag containing what was later to be determined to be 73 blue tablets bearing an "M" and a "30" which were believed to be fentanyl as well as a second baggie containing a few grams of suspected fentanyl powder. The vehicle also contained men's and women's clothing. POE-CARPENTER told the detective that the clothing and personal items were hers and MAXWELL's.

19. While these events occurred, I have been involved in a federal prosecution in the Eastern District of California of multiple members and associates of the Aryan Brotherhood. That case arose out of wiretaps of a contraband cellphone possessed by AB member Ronald Yandell during the fall of 2016. That investigation resulted in charges brought against various Aryan Brotherhood members for violations of federal law including RICO conspiracy, murder in aid of racketeering, conspiracy to commit murder in aid of racketeering, and multiple drug trafficking charges. *See United States v. Yandell, et al.*, Case No. 2:19-cr-107-KJM. Two of the indicted defendants included Pat BRADY and William "Billy" SYLVESTER.

20. In late 2023, BRADY pled guilty to murder in aid of racketeering, a charge that carries a mandatory life sentence. His sentencing date is pending. Although BRADY is in federal custody pursuant to a federal writ, he is currently housed within the CDCR prison at CSP-Sacramento in Folsom, California. Trial in the *Yandell* case for defendant SYLVESTER (and two of his co-defendants) commenced with jury selection on February 20, 2024. The jury began deliberations in the trial on April 24, 2024.

21. During the *Yandell* trial, several prior-AB members and associates—both in-custody and out-of-custody—have testified in open court about their involvement in the gang and committing crimes for the Aryan Brotherhood. SYLVESTER is also currently housed as CSP-Sacramento at this time during trial.

22. Inmates within the California State Prison System are provided with a tablet device for communication with persons outside the facility in which they are housed. For security reasons, all tablets record and save communications facilitated through the tablet, and, like phone calls placed through prison telephones, the tablets inform users that the communications facilitated by the tablet are subject to recording. SSU SA Miles informed me on April 23, 2024, that, within the last week, a CDCR tablet device recorded BRADY speaking with an individual identified as MAXWELL. Agents identified MAXWELL as the participant in the call with BRADY because MAXWELL referenced details concerning his arrest, BRADY referred to the participant as "D," shorthand or a nickname for MAXWELL's first name, Donald, and referred to MAXWELL's name specifically during a conversation with BRADY's fiancée. CDCR records indicate that BRADY and MAXWELL were previously housed together at PRCS-Shasta. During a call on April 21, 2024, BRADY told MAXWELL that he had spoken with SYLVESTER about MAXWELL's pending cases. MAXWELL stated that he had been arrested again with another pistol and anticipated trying to get his case postponed as long as possible and then not showing up. BRADY told MAXWELL that he and "the brothers here"

5

needed him to perform a task and that SYLVESTER had confirmed that MAXWELL was the only one to perform this task. I noted that CDCR records showed that MAXWELL had been housed in prison in CSP-Sacramento at the same time as SYLVESTER before MAXWELL was paroled from prison. SA Miles related that BRADY said: "What happened, without going into it dude, it's like a slap in the face to the Tip and anybody that's associated to us man. It cannot stand bro. So, Billy (SYLVESTER) is like dude, the only one we can really count on for something like this, that has the fucking nut sack to do this is and has the fuckin heart to do it is D." BRADY told MAXWELL that he had gotten his phone number from SYLVESTER.

23. BRADY went on to say: "Here is what I am going to do bro, do you know uh…I'm not even going to say that. I'm going to give your number to them right? I'm going to have them call you. Give you all the information and that way you know everything you need to know. And the next time me and you talk or you and BILLY talk or whatever, you'll know everything. This has…once you get the information, it has to fuckin happen within a day or two of you getting it." BRADY then informed MAXWELL that if gas money was needed "we (AB) can get together a couple hundred dollars for travel." BRADY stated the drive for MAXWELL should be a "3 to 4 hour drive, maybe a 2.5hr drive to do this." BRADY said, "What I am going to do, is…I think they will be able to call you on Tuesday bro. I'm almost 100 that you know the person that is going to be calling you bro, he's from Sac. I'll just say that. You guys were in fuckin High Desert. So, what I'm getting at is everybody within this little circle, me, you, can be trusted. We all know each other. No one outside this little group of people know anything dude. About any shit we don't want them to until this is done."

24. BRADY continued: "I want to tell you this too dude, I am proud of you man. You've been staying out there, fuckin doing your thing man. They're surprised you're still out there. You ain't gone down in a big shoot out or nothing crazy like that, tweaked out, or whatever. We are proud of you, bro, just keep focused and do your thing. You can get this done right?" MAXWELL responded, "Yeah." BRADY said, "if you can get this done bro, we will fuckin…uh…we've already been talking about you man, I don't wanna get into that. Just take one step at a time bro. Tomorrow I'll get your number to them and then tomorrow or Tuesday, they will be reaching out to you. I believe he gets online sometime after 6. Will you be available for me or BILLY to call on? Tomorrow night or Tuesday or something?" MAXWELL stated, "Yeah, if I know exactly what time you guys are going to call, I'll be available." BRADY said, "The next 48 hours, I know that a broad fuckin stroke right there, but the next 48 hours, keep an eye out for us. Because one of us will be calling. Alright bro?" MAXWELL responded, "Sounds good."

25. I subsequently learned from SSU SA Miles that on April 22, 2024, BRADY was recorded using another inmate's tablet device to contact his known fiancée at her known cellphone number. During this call, BRADY instructed his fiancée to provide MAXWELL's number (which he repeated to her) to another associate and to have this individual call MAXWELL ("You know his last name is MAXWELL") and to tell the associate that MAXWELL was "a good friend in the area who can one

hundred percent help out with this…he will have his phone strapped to his ass for the next 72 hours waiting to hear from you…" and to "stress…the need for um when you move fast when you move fast…the need to move on this fast, the need to move on this immediately. The stress for immediate action…put we are talking in the next 48 hours." BRADY when on to say "…after this there will be no communication about it. This will be the last message about it," and that "dude is going to be waiting by his phone until he hears …." BRADY finished with "Say thanks to everybody and we all send our love and shoot that bad boy off…now I want you to delete that entire message and delete that one she sent you from the other day."

26. Based upon events that occurred during the *Yandell* trial and the established pattern of the gang in offering entrance into the enterprise for committing an active violence, I interpret these recorded messages to reveal that BRADY and SYLVESTER are conspiring with MAXWELL to have MAXWELL travel to Sacramento in order to kill a particular individual who testified at this trial with regards to his prior activities within the Aryan Brotherhood because they believe the witness is located there. Based on evidence adduced during the *Yandell* trial, the gang frequently targets former members who cooperate with law enforcement, especially when they publicly provide evidence against the gang. BRADY's comments suggest that he and other enterprise members believe that the testimony painted the gang in a negative light, and they want to exact revenge. The comments of BRADY to MAXWELL strongly suggest that BRADY is offering potential entrance into the gang if MAXWELL carries out the murder of the witness who provided evidence at the *Yandell* trial.

27. I respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this criminal complaint. I believe that sealing this document is necessary because the information contained herein is relevant to an ongoing investigation and an attempt to arrest MAXWELL. Additionally, this complaint outlines the offer of potential entrance into the Arian Brotherhood gang if MAXWELL carries out the murder of a witness who provided evidence at during a federal criminal trial. It is therefore reasonable to assume that these individual under investigation will regularly search for any pertinent criminal affidavits via the Internet and disseminate them to other criminals as they deem appropriate, i.e., post them publicly online or use the as information to share with other members of the gang. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation, may severely jeopardize its effectiveness, and may impact the ability of law enforcement to arrest MAXWELL. For these reasons, I request that the Court issue an order sealing, until further order of the Court, all papers submitted in support of this criminal complaint.

28. I request that based upon this Affidavit, a Criminal Complaint and arrest warrant be issued for Donald Ulysses MAXWELL charging him with, on or about July 23, 2023, possession with intent to distribute a mixture and substance containing a detectable amount of Fentanyl and Methamphetamine, Schedule II Controlled Substances, in violation of 21 U.S.C. § 841(a)(1); on or about July 23, 2023, felon in possession of a

firearm, in violation of 18 U.S.C. § 922(g)(1); and on or about March 14, 2024, felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

I swear under penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information and belief.

    /s/ Brian Nehring
Brian Nehring, Special Agent
Drug Enforcement Administration

Sworn to and subscribed before
me telephonically on the __26th__ day of April 2024

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

Approved as to form:

_/s/ Robert C. Abendroth_
Robert C. Abendroth
Assistant U.S. Attorney